Joseph W. Lund, trustee, *vs.* Taylor F. Smith & another.

Suffolk.    January 16, 1906. — May 16, 1906.

Present: Knowlton, C. J., Morton, Lathrop, Hammond, & Sheldon, JJ.

*Contract.    Trade Name.    Trademark.*

In an action on an account annexed by a corporation conducting an advertising
agency against the members of a firm of wholesale liquor dealers for advertising,
it appeared that the plaintiff through an agent undertook to advertise a new
brand of whiskey to be bottled by the defendants, and in good faith suggested a
trade name for it which the defendants selected and adopted, several other names
also having been suggested by the plaintiff's agent. The defendants undertook
to attend themselves to registering the name as a trademark, and registered it in
the Patent Office as a label instead of a trademark. The plaintiff began to ad-
vertise the whiskey and the defendants to put it on the market, both acting in
good faith, when it was discovered that one of the largest wholesale liquor dealers
in the West claimed the exclusive right to use the trade name adopted by the de-
fendants, that he had registered it as a trademark twenty-five years before and
had been selling whiskey under the name ever since. He forbade the defend-
ants to use the name, and they discontinued the use of the name and the label.
They immediately instructed the plaintiff to stop all further advertising, and no
more was done after that. *Held,* that there was no warranty by the plaintiff's
agent express or implied that the trade name adopted was new, and that there
was no want or failure of consideration for the contract under which the work
was performed ; accordingly that a finding for the plaintiff on its account an-
nexed for a reasonable compensation for the work already done was justified.
*Held, also,* that the validity of the trademark of the western dealer who forbade
the use of the trade name was immaterial, and that it did not matter whether the
defendants made a blunder in registering a label instead of a trademark, as no
damages were claimed for a breach of a contract for further advertising.

Lathrop, J.    This is an action on an account annexed,
brought by the trustee in bankruptcy of Pettingill and Com-
pany, a corporation engaged in the business of an advertising
agency, to recover a balance alleged to be due the bankrupt for
advertising.    The defendants, who are the members of a firm
engaged in the business of dealing in liquors at wholesale, under
the name of Thomas L. Smith and Sons, filed an answer seeking
to recoup damages sustained by them and a declaration in set-off.
The case was heard by a judge of the Superior Court, sitting
without a jury.    He found certain facts and also found for the
plaintiff for the full amount claimed, and reported the case for
the determination of this court.    No question is made but that

the amount sued for is correct, and the only point raised is as to the validity of the defence.   The following facts appear from the report of the judge.

In August, 1903, one Bell, who was an agent of Pettingill and Company, and was unknown to the defendants, came to their place of business, was introduced to them by a person whom they knew, and sought to interest them in a proposition that they should get up a bottled whiskey for the market, which Pettingill and Company would advertise for them.   The matter was discussed in a general way, but no definite proposition was made at that time.   Subsequently Bell called again, and the subject was more fully gone into, including the cost and amount of advertising and the name to be adopted for the whiskey.   Then came up the question of a label.   Bell said, " I will get up the label.   I will see Mr. Marston.   I will have him make me several sketches and then I will submit them to you and you can choose any one you like."   Some time afterward Bell brought to the defendants several sketches of labels, and after discussion the defendants selected one of them which bore the name " Golden Horn."   One of the defendants testified that, during the numerous interviews between Bell and the defendants up to the time this name was selected, Bell stated that his proposition was that Pettingill and Company should furnish the label, do the advertising, and take charge of getting the name before the public ; that the defendants were to do nothing except produce and bottle the whiskey, keep up the grade, put it on the market in good order, and make the sales, — all else was to be looked after by Pettingill and Company ; but it appeared by other testimony of the defendants that the defendants in fact were to register the trade name and that they actually picked out the label from those furnished by Bell and did some advertising on their own account, and did other matters.   During the numerous preliminary interviews Bell, in consultation with and with the consent of the defendants, shaped the plan to be followed, and suggested various details, such as having the bottles registered a full quart, having the grade a little better than other well known brands on the market, and he selected the blend to be used, which was one out of several made up by the defendants for his opinion.   The name " Golden Horn " was selected

from the others because one of the defendants and Bell liked it best, and Bell thought that the motto which he had attached to it, " Blow yourself on Golden Horn," would be a great catchword. He stated to the defendants that he did not want to go into it or to have them go into it unless they thought that there was to be a large field for it; that he contemplated covering the entire country; and that if they would keep the standard up to the samples they had shown him, there was no question but that they could cover the entire country eventually with this whiskey. Bell made no specific representations as to the validity of the name " Golden Horn." The question of availability and whether its use had been appropriated by any other person, so that the defendants could not legally use it, was not raised, and, so far as appears, neither the defendants nor Bell knew of its use by any other person.

It further appeared that the defendants were to attend to the registration of the name as a trademark in Washington; that they undertook to do that themselves; and that they registered it as a label instead of as a trademark. Soon after a certificate of such registration was received from the Patent Office.

Immediately after the receipt of this document, the defendants began the printing of labels, etc., and the active work of putting the whiskey on the market, in good faith and fully supposing that they were the only persons who had the right to use the name, and Pettingill and Company began to advertise the whiskey throughout New England, the names of the papers in which the advertisements were inserted and the dates of a part of such insertions being set out in the declaration. While they were marketing the whiskey under this name, at some time in January, 1904, they learned that there was a private concern in Chicago which made a business of advertising trade names and the like, and ran a bureau in which such names were collected and through which information concerning them was given to its customers, and they sent the name to this concern for registration. This firm immediately, about January, 1904, informed the defendants that they could not record the name as the defendants' property, because some one else already had appropriated it. Further inquiry revealed the fact that one Charles Rebstock of St. Louis, Missouri, claimed the sole right to the

name for whiskey, and claimed to have been using it and to have registered it as a trademark about twenty-five years. One of the defendants went to St. Louis and saw Rebstock on March 14, 1904, and he and his firm were then forbidden by Rebstock to continue the use of the name and label. On that date, or a few days later, Rebstock in writing forbade the defendants to use the name and label further, claiming the exclusive right to use it himself. The defendants complied, and discontinued the use of the name and label from that date. They immediately notified Pettingill and Company of the facts, and instructed them to stop all further advertising. No new advertising was done subsequently to that.

Charles Rebstock is one of the largest wholesale liquor dealers in the West, and has been conducting the same business without interruption since 1871. He adopted and began to use the name " Golden Horn " for whiskey both in bottles and in bulk about twenty-five years before 1904; and he has used that name continuously and without interruption and has sold whiskey under it ever since its adoption by him, the name having been used for whiskey in barrels, half-barrels, smaller packages, and on the labels of bottles of various sizes. The labels used by him on March 14, 1904, and for several years before bore the words " Golden Horn Pure Old Rye Whiskey Extra Fine Quality Bottled by Chas. Rebstock & Co., St. Louis, Mo." And in the centre an upright shield with an eagle standing on the top of it, with flags branching to the right and left from the shield. Another label was also in use by him identical with the first, except that it contained the words " Bourbon Whiskey " instead of the words " Rye Whiskey." Previously he had used as a trademark a label somewhat different in color and design; but all the labels that he has ever used have had on them the words " Golden Horn "; and he has used labels bearing that name continuously for twenty-five years, and never has assigned or parted with his right to use the name. During this period he has sold or shipped for sale goods bearing this name in a great many States of the United States, but not in Massachusetts, the only evidence on this point being given in a deposition by Rebstock that such sales had been made " in a great many States, the number of which I do not remember at this moment — I

might mention a few : Missouri, Illinois, Texas and many others — I never sold ' Golden Horn ' whiskey in the State of Massachusetts.'' He stated in answer to cross-interrogatories that he did not remember the extent of his sales of " Golden Horn " whiskey, and made the same answer to a request to give his best judgment as to such sales. He also has registered as a name for whiskey the words " Stonewall," " Deer Lane " and " Snow Hill," and " Stonewall " is his principal brand. Rebstock had the name " Golden Horn " registered as a trademark at Washington on February 11, 1879.

The plaintiff called the attention of the judge to the fact that the above registration of Rebstock was under the trademark act of 1870, §§ 4937–4947 of the U. S. Rev. Sts., and stated that that act was contrary to the Constitution of the United States, and that therefore Rebstock acquired no rights by virtue of his registration under that act.

The plaintiff also called the attention of the judge to the trademark act of March 3, 1881, and the fact that it was in force at the time the defendants copyrighted the label " Golden Horn," and argued that they should have proceeded under that statute to register the words " Golden Horn " as a trademark, and that § 3 of the act requires, and in fact results in, a search by the Patent Office as to the novelty of applications for trademarks ; so that if the defendants had proceeded under that act, the prior registration by Rebstock would have been discovered before any expense was incurred by the plaintiff.

The plaintiff further called the attention of the judge to the label act of June 18, 1874, and argued that the statute was only for the protection of labels — not trademarks — and was not the act under which the defendants should have proceeded to secure protection of their mark.

The plaintiff introduced in evidence the rules of the United States Patent Office referring to labels, and referred particularly to Rule 23 as to labels, which is as follows :

" 23. The so-called print and label section of the copyright statute, approved June 18, 1874, is construed to provide for the registration of any print or label without examination as to its novelty."

While the question of the validity of Rebstock's trademark

has been argued at length, we do not think that it is of importance in this case; nor do we think it of importance whether the defendants made a blunder in registering a label instead of a trademark. The plaintiff does not sue for damages for breach of a contract, but on an account annexed. The advertising ceased as soon as the defendants notified Pettingill and Company to stop, and all that the plaintiff seeks to recover is for the work actually done.

We find nothing in the case to warrant a finding in favor of the defendants either in recoupment or in set-off. There was no express or implied warranty on the part of Bell that the name " Golden Horn " was new. There was no representation made by Bell. The only possible ground upon which the defendants can rely is their own contradictory evidence as to whether Bell was to do anything as to registering a trademark. But this was a question of fact to be determined by the judge who heard the case, and we cannot revise his finding. There was no evidence of fraud or negligence on the part of Bell. See *Richardson* v. *Taylor*, 136 Mass. 143.

Nor do we see how there was any want or failure of consideration. Pettingill and Company agreed to cause to be advertised the defendants' whiskey, and the defendants agreed to pay for such advertising. The whiskey was so advertised until the defendants ordered the advertising stopped ; and we can see no reason why what was already done should not be paid for.

*Judgment on the findings.*

*H. I. Cummings*, for the defendants.

*G. Cunningham*, (*J. W. Lund* with him,) for the plaintiff.